Steven S. Lubliner
Law Offices of Steven S. Lubliner
P.O. Box 750639
Petaluma, CA  94975
Phone:  (707) 789-0516
Fax:  (707) 789-0515

Attorney for Plaintiff DONALD J. BEARDSLEE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD J. BEARDSLEE,<br><br>       Plaintiff,<br><br>v.<br><br>JEANNE WOODFORD, Director of the California Department of Corrections; , JILL L. BROWN, Acting Warden, San Quentin State Prison, San Quentin, CA; and Does 1-50<br><br>       Defendants. | Case No.<br><br>**COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF [42 U.S.C. § 1983]**<br><br>**EXECUTION IMMINENT: EXPEDITED REVIEW REQUESTED** |

The plaintiff, Donald J. Beardslee, alleges as follows:

## NATURE OF ACTION

1. This action is brought pursuant to 42 U.S.C. § 1983 for violations and threatened violations of the right of plaintiff to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments of the United States Constitution. Plaintiff seeks temporary, preliminary, and permanent injunctive relief to prevent the defendants from executing plaintiff by means of lethal injection, as that method of execution currently used in California. Plaintiff contends that lethal injection, as performed in California, inflicts unnecessary pain and torture. Plaintiff further contends that the use of Pancuronium Bromide, a paralytic agent that acts as a chemical veil over the process, disguises the pain and suffering that he will be subjected to. Plaintiff additionally contends that defendants, as a result of their failure to use medically approved procedures and properly trained personnel, have inflicted pain and torture to several executed prisoners in the past, so that plaintiff is certain he will suffer the same fate unless defendants adopt a humane and safe execution protocol. This action also seeks to redress Plaintiff's right to free speech under the First and Fourteenth Amendments to the United States Constitution. Defendants's administration of Pancuronium Bromide during the execution process will paralyze Plaintiff, rendering him unable to speak, move or communicate. As such, Plaintiff will be prevented from commenting on a significant public controversy: the effectiveness of California's execution protocol in rendering an inmate unconscious so that he does not experience the painful torture associated with the administration of a lethal dose of potassium chloride.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question),

1

COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF

§ 1343 (civil rights violations), § 2201 (declaratory relief), § 2202 (further relief).  This action arises under the First, Eighth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. § 1983.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) in that plaintiff is currently incarcerated in San Quentin State Prison in San Quentin, California, located in this District.  All executions conducted by the State of California ("State") occur at San Quentin.  The events giving rise to this complaint will occur in this District.

## THE PARTIES

4. Plaintiff Donald J. Beardslee is a United States citizen and a resident of the State. He s currently a death-sentenced prisoner under the supervision of the California Department of Corrections, C-82702.  He is held in San Quentin State Prison, San Quentin, California, 94974.

5. Defendant Jeanne Woodford is the Director of the California Department of Corrections.

6. Jill L. Brown is the Acting Warden of San Quentin State Prison where the plaintiff is incarcerated and where his execution is scheduled to occur.

7. Plaintiff is ignorant of the true names of Does 1-50 but alleges that they have or will participate in Plaintiff's execution by virtue of their roles in designing, implementing and/or carrying out the lethal injection process.  When plaintiff discovers the Doe Defendants's true identities, he will amend his complaint accordingly.

## GENERAL ALLEGATIONS

8. The San Mateo County Superior Court has scheduled Plaintiff's execution

2

COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF

for January 19, 2005.  State officials have announced that they will commence with the execution at 12:01 a.m.

9. The State intends to execute plaintiff by poisoning him with a lethal combination of three chemical substances:  sodium pentothal, a short acting barbiturate; pancuronium bromide, which paralyzes all voluntary muscles; and potassium chloride, an extremely painful chemical which activates the nerve fibers lining the prisoner's veins and interferes with the heart's contractions, causing cardiac arrest.

10. San Quentin Institution Procedure No. 770, the protocol by which lethal injection executions are preformed, violates constitutional and statutory provisions enacted to prevent cruelty, pain and torture.

11. Procedure 770 was adopted without any medical research and review to determine whether a prisoner would not suffer a painful death.  No member of the medical community was involved in its adoption.  The procedure was adopted by the former Warden of San Quentin, Daniel Vasquez, after observing two executions in Texas, without any input from or consultation with medical personnel.

12. The combination of the three chemicals used in Procedure 770, in conjunction with the absence of standardized procedures and qualifications of the personnel involved, creates a grave and substantial risk that that the plaintiff will be conscious and experience an excruciatingly painful and protracted death.

13. Sodium pentothal is a very short acting barbiturate that is ordinarily administered only during the preliminary phase of the administration of anesthesia.  There is a reasonable likelihood that sodium pentothal may not provide a sedative effect for the duration of the execution process.  Without adequate sedation, plaintiff will experience excruciating pain as a result of the administration of potassium chloride.

14. Pancuronium bromide, the second chemical administered in the lethal injection process, paralyzes voluntary muscles including the diaphragm.  It does not, however, effect consciousness or the perception of pain.  Pancuronium bromide,

3
COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF

administered by itself as a "lethal dose", would not result in a quick death, but would ultimately cause someone to suffocate to death while still conscious. There is no indication in California's lethal injection protocol, however, that pancuronium bromide is used to cause death. It therefore is completely unnecessary in the lethal injection process and only serves to mask any pain or suffering that the plaintiff may experience.

15.     Pancuronium bromide could not lawfully be used as the fatal agent because causing death by suffocation violates the Eighth Amendment's prohibition against cruel and unusual punishments.

16.     Procedure 770 lacks medically necessary safeguards, thus increasing the risk of the plaintiff suffering unnecessary pain in the lethal injection process. There is no standardized time to administer each of the three chemicals. The protocols make no mention to insure that the chemicals are properly flowing into the prisoner, nor to insure that the prisoner is properly sedated prior to the administration of lethal chemicals. The protocols do not establish any minimum qualifications and expertise required of the personnel performing the all of the tasks of the lethal injection process. There are no guidelines for these personnel to rely upon if they are required to exercise their discretion during the process. The protocol has no plan in place if the plaintiff requires medical assistance during the execution.

### COUNT I
### VIOLATION OF RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT PURSUANT TO THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUION

**(42 U.S.C. § 1983)**

17.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 16

18.     Defendants  Jill L. Brown, Jeanne Woodford and Doe Defendants are

4

COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF

1  acting under color of California law or causing to be administered to plaintiff chemicals
2  that will case unnecessary pain in the execution of a sentence of death, thereby
3  depriving plaintiff of his rights under the Eighth and Fourteenth Amendments to be free
4  from cruel and unusual punishment, in violation of 42 U.S.C. § 1983.

5      19.     The California Department of Corrections Procedure 770, specifying its
6  lethal injection protocol, violates plaintiffs rights under the cruel and unusual
7  punishments clause of the Eighth Amendment because (a) the protocol creates the
8  unreasonable and unacceptable risk of unnecessary physical and psychological pain; (b)
9  the protocol does not comport with contemporary norms and standards of society; and
10 (c) the protocol offends the dignity of the person and society.

11     20.     California's lethal injection protocol utilizes three chemicals without any
12 indications of the proper training, experience or expertise of the personnel entrusted
13 with the lethal injection procedure. The protocol fails to state any timing for the
14 administration of the three separate chemicals, which is an essential requirement for the
15 proper administration of these chemicals.

16     21.     California's lethal injection protocol's use of pancuronium bromide
17 increases the risk that the use of this chemical, in combination with the initial dose of
18 sodium pentothal, will result in plaintiff being paralyzed but conscious and suffering
19 death from the burning veins and resultant heart failure due to the potassium chloride.
20 Moreover, the American Veterinary Medical Association (AVMA) states that a
21 combination of a barbiturate and a neuromuscular blocking agent such as pancuronium
22 bromide is not an acceptable euthanasia method. This is because of the likelihood that,
23 when administered in a sufficiently large dose to cause death, pancuronium bromide
24 does not cause a quick death. Because California's protocol calls for the use of
25 Potassium Chloride in a lethal dose, the use of pancuronium bromide serves no purpose,
26 but increases the risk that a prisoner will be paralyzed but conscious while he is being
27 injected with an extremely painful drug. Without the use of pancuronium bromide, a
28

5

COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF

prisoner will be able to indicate that he is conscious prior to the administration of potassium chloride. This is particularly crucial because California's protocol indicates that the prisoner will be alone in a room when he is executed, making it impossible to determine whether a prisoner is conscious once he is paralyzed by the pancuronium bromide.

22. Sodium pentothal, which is an extremely fast acting but not long lasting barbiturate, is used as the anesthesia agent in California's lethal injection procedure. In veterinary medicine, sodium Phenobarbital, a somewhat lower acting but longer lasting barbiturate, is used in euthanasia. The AVMA states that, when potassium chloride is used for euthanasia, it is extremely important that personnel performing euthanasia must be trained and knowledgeable in anaesthetic techniques and are competent in assessing anesthetic depth appropriate for potassium chloride, which requires animals to be in a surgical plane of anesthesia characterized by loss of consciousness, loss of reflex muscle response, and loss of response to noxious stimuli. California law requires that non-veterinary personnel performing animal euthanasia undergo strict training by a veterinarian and/or a registered veterinary technician who specializes in anesthesia. California's lethal injection protocol does not require that the personnel using the same drug in executing prisoners undergo any training.

23. The California lethal injection procedure fails to address the individual prisoners medical condition and history. Several regularly prescribed drugs at San Quentin interfere with the ability of sodium pentothal to act as an anesthetic. Moreover, the lethal injection protocol allows for prisoners to take Valium shortly before the execution, which can also interfere with the sodium pentothal.

24. There is no description of any training, credentials, certifications, experience, or proficiency of any personnel involved in the administration of the lethal injection procedure, which is a complex medical event that requires a great deal of expertise. For example, there is no mention of anyone with sufficient expertise to

6
COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF

properly insert an intravenous line, determine if there is a blockage in the intravenous line, or evaluate whether a prisoner is properly sedated, thus increasing the risk that a prisoner would not get the needed amount of anesthetic prior to being paralyzed by the pancuronium bromide and burned by the potassium chloride. Toxicology reports from executed prisoners from other states demonstrate that many of them were likely conscious during the administration of lethal drugs, which likely occurs because of either improper insertion of the intravenous line or an unrecognized blockage in the line.

25. Inducing unconsciousness by correctly administering sodium thiopental is indispensable to preventing the wanton infliction of pain when the potassium chloride is administered. The protocol does not require the preparation of backup syringes of sodium thiopental. Further, the protocol mandates that the syringe containing sodium thiopental be prepared "last, when it appears that it shall actually be used." Given the whirl of conflicting events surrounding the last minutes before a scheduled execution, the protocol increases the risk that the sodium thiopental will not be prepared and administered properly or, worse, will not be prepared at all.

26. The California lethal injection protocol fails to address any reasonably foreseeable complications with any appropriate medical response. This includes the possibility that a stay of execution could be entered after the lethal injection process has begun. The protocol fails to contain any safeguards to ensure that a prisoner is not wrongly executed should this happen.

27. Any time up until the potassium chloride is administered, the prisoner could be readily resuscitated given the appropriately trained personnel and routine resuscitation medication and equipment. If this were to occur after the potassium chloride was administered, a resuscitation would be more challenging but still possible. Resuscitation would therefore require equipment close-by, and properly credentialed personnel, neither of which are present in Procedure 770.

# COUNT II
## VIOLATION OF RIGHT OF FREE SPEECH PURSUANT TO THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUION

**(42 U.S.C. § 1983)**

28. Plaintiff incorporates paragraphs one through twenty-seven of the complaint as if fully set forth herein.

29. The effectiveness of California's lethal injection protocol and protocols similar to it around the country is a current public controversy.

30. Plaintiff has educated himself about the lethal injection controversy. Plaintiff is convinced that he will be awake and conscious to experience the burning torture of a lethal injection of potassium chloride.

31. If plaintiff's execution goes forward, and in the event that he has not been properly anaesthetized, he wants to be able to communicate that fact and the fact that he is experiencing excruciating pain.

32. Plaintiff wants to communicate this information so that defendants, the Governor, the Legislature, the public and those acting on behalf of other death row inmates can evaluate whether California's execution protocol violates the Eighth Amendment prohibition against cruel and unusual punishment.

33. Plaintiff also wants to communicate the information that the execution protocol failed in his particular case so that 1) the public can be educated about the lethal injection procedure's very real possibility for torturing the condemned, and 2) defendants can be alerted to the failure so that they can identify where the system broke down in order to ensure that the mistake is not repeated in future executions.

34. The administration of pancuronium bromide during the execution procedure will paralyze Plaintiff's voluntary muscles. Because he will be unable to speak or move, he will be unable to communicate the fact that he has not been properly anaesthetized and that he is experiencing excruciating pain.

1  35. Plaintiff has a First Amendment right to communicate as described in the preceding paragraphs. The administration of pancuronium bromide must be enjoined as an unconstitutional infringement of that right.

36. The use of pancurium bromide to restrict Plaintiff's exercise of his First Amendment rights is not content neutral. The only way there would be any speech at all is if the execution protocol does not work.

37. The use of pancuronium bromide to paralyze Plaintiff and render him unable to communicate will not serve a legitimate penological purpose. The covering up of Eighth Amendment violations is not a legitimate penological purpose.

38. Pancuronium bromide does not play a legitimate role in killing the condemned person. The execution protocol provides that potassium chloride kills the condemned. The administration of pancuronium bromide cannot be justified on the grounds that the drug paralyzes the breathing muscles because death by asphyxiation is itself a form of cruel and unusual punishment.

39. If pancuronium bromide is administered and Plaintiff is paralyzed during the execution procedure, he will have no alternative "reasonable and effective means of communication" to communicate that he was not properly anaesthetized because he will be dead at the conclusion of the procedure.

40. Enjoining the administration of pancuronium bromide will have no impact on the correctional institution. If anything, it will simplify the execution process by eliminating one step in the process.

41. The issue of readily available alternatives to pancuronium bromide is not an issue in this case because paralyzing a condemned inmate to prevent him from communicating about breakdowns in the execution process is not a legitimate penological goal.

42. The Ninth Circuit and this Court have previously held that Defendants and their predecessors, in order to forestall discussion and criticism of the process, have

9
COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF

implemented restrictions on the execution process to prevent witnesses from being aware of complications with the procedure.

## EXHAUSTION ALLEGATIONS

43. On November 24, 2004, plaintiff filed two inmate appeals on CDC Form 602 alleging that California's lethal injection procedure violated his rights under the First and Eighth Amendment.

44. Plaintiff asked that his appeal be processed as an emergency appeal pursuant to 15 Cal. Code Regs. §3084.7 on the ground that the People shortly intended to seek an execution date.

45. On November 29, the Form 602 for the First Amendment complaint was returned to him. Plaintiff was informed that his First Amendment claim would be addressed in conjunction with the Form 602 appeal setting out the Eighth Amendment claim.

46. Plaintiff was also initially informed on November 29, 2004, that while the first levels of review would be bypassed and his claim would go directly to the Warden for review, it would not be handled as an emergency appeal and that he could expect a decision by January 10, 2005.

47. Defendants subsequently changed their mind and processed plaintiff's claims as emergency appeals. On December 6, 2004, defendant Warden denied both of plaintiff's appeals.

48. On December 8, 2004, Plaintiff submitted his First and Eighth Amendment appeals to defendant Director of the Department of Corrections for Third Level review. On December 12, 2004, the Director's office denied both of Plaintiff's appeals.

49. Having gone through Third Level review, Plaintiff has completed the 602 appeals process. Plaintiff has no other administrative remedies available to him to prevent his execution from being carried out in violation of his constitutional rights.

# **PRAYER FOR RELIEF**

WHEREFORE, Donald Beardslee prays for:

1. Temporary, preliminary and permanent injunctive relief against the defendants, their officers, agents, servants, employees and all persons acting in concert with them, that enjoins the defendants from executing plaintiff by lethal injection using Procedure 770;

2. In the event that Procedure 770 is not enjoined in its entirety as violating the Eighth Amendment, temporary, preliminary and permanent injunctive relief against defendants, their officers, agents, servants, employees and all persons acting in concert with them, that enjoins the defendants from administering Pancuronium Bromide during the execution process;

3. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1983 and the laws of the United States;

4. Costs of suit; and

Any such other relief as the Court deems just and proper.

Dated:  December 19, 2004

By:   /s Steven S. Lubliner
        Steven S. Lubliner
        Attorney for Donald Beardslee

# **VERIFICATION**

I, Steven S. Lubliner, hereby declare:

1. I am a member of the State Bar of California and admitted to practice before all courts of this state, as well as this Court, the U.S. Court of Appeals for the Ninth Circuit and the U.S. Supreme Court.  I am retained counsel for Plaintiff, Donald J. Beardslee, in this matter.  I have personal knowledge of the matters set forth in this complaint, except as otherwise indicated, and could and would competently testify to them if called upon to do so.

2. Mr. Beardslee is in custody and restrained of his liberty in a county other than where my office is situated.  Additionally, many of the facts alleged herein are more within my knowledge.  Therefore, I make this verification on his behalf.

3. I have reviewed the foregoing complaint.  I verify that all of the alleged facts that are not otherwise supported by citations to the records or declarations to the attached petitions are true and correct to my own knowledge, except as to any matters stated in it on information and belief, which I am informed and believe are true and correct.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on December 19, 2004 in Petaluma, California.

s/Steven S. Lubliner