\*\* E-filed 1/7/05 \*\*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Donald J. BEARDSLEE,<br><br>         Plaintiff,<br><br>    v.<br><br>Jeanne S. WOODFORD, Director of the California Department of Corrections; Jill L. Brown, Warden of San Quentin State Prison; and Does 1-50,<br><br>         Defendants. | Case Number C 04 5381 JF<br><br>DEATH-PENALTY CASE<br><br>ORDER DENYING MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND FOR EXPEDITED DISCOVERY<br><br>[Docket Nos. 2 & 8] |

Plaintiff Donald J. Beardslee moves for a temporary restraining order or preliminary injunction and for expedited discovery. Defendants Jeanne S. Woodford, Director of the California Department of Corrections, and Jill L. Brown, Warden of San Quentin State Prison, oppose the motions. The Court has read the moving and responding papers and has considered the oral arguments of counsel presented on Thursday, January 6, 2005. For the reasons set forth below, the motions will be denied.

## I. BACKGROUND

Plaintiff has been sentenced to death. He is scheduled to be executed by lethal injection just after midnight on Wednesday, January 19, 2005. On Monday, December 20, 2004, Plaintiff filed the present action pursuant to 42 U.S.C. § 1983 (2004). Plaintiff seeks injunctive relief to

prevent Defendants from executing him pursuant to California's lethal injection protocol, contending that executions performed pursuant to that protocol violate the Eighth Amendment's prohibition of cruel and unusual punishment as well as his First Amendment right to freedom of speech.

## II. LEGAL STANDARD

As a general rule, a party seeking a preliminary injunction must show either (1) a likelihood of success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and the balance of hardships tipping in the movant's favor. See Roe v. Anderson, 134 F.3d 1400, 1401-02 (9th Cir. 1998); Apple Computer, Inc. v. Formula Int'l, Inc., 725 F.2d 521, 523 (9th Cir. 1984). These formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. See Roe, 134 F.3d at 1402.

In the death penalty context,

> before granting a stay [of execution], a district court must consider not only the likelihood of success on the merits and the relative harm to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim. Given the State's significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.

Nelson v. Campbell, 541 U.S. 637, 124 S. Ct. 2117, 2126 (2004) (citations omitted).

## III. DISCUSSION

Less than one year ago, another resident of California's death row, Kevin Cooper, faced imminent execution. Cooper filed an action in this Court in which he challenged the same lethal injection protocol that is at issue in the present case. This Court declined to stay the execution. The Court found that Cooper had delayed unduly in asserting his claims and that he had done no more than raise the possibility that he might suffer unnecessary pain if errors were made in the course of his execution. Cooper v. Rimmer, No. C 04 436 JF, 2004 WL 231325 (N.D. Cal. Feb.

2

6, 2004) (Fogel, J.). The United States Court of Appeals for the Ninth Circuit affirmed for the same reasons. Cooper, 379 F.3d 1029 (2004).[1]

Now binding precedent, the Ninth Circuit's opinion in Cooper necessarily is the point of departure for this Court's analysis of Plaintiff's claims. Accordingly, the Court considers whether and to what extent Plaintiff's case is distinguishable from Cooper.

### A. Undue Delay

While Cooper filed his action a mere eight days before he was due to be executed, Plaintiff filed the present action thirty days before his scheduled execution date. In addition, unlike Cooper, Plaintiff exhausted his administrative remedies before filing suit. The Court recognizes that the timing of Plaintiff's filing permits a somewhat more orderly judicial process than was possible in Cooper. Nonetheless, Plaintiff's commencement of this action so close to his execution date presents the same basic problem presented in Cooper, which is that litigation through trial is impossible unless the Court agrees to stay the pending execution. The record reflects that with one exception noted below virtually all of the evidence that Plaintiff proffers here became available while a stay of execution was in place so that Plaintiff could pursue his federal habeas corpus petition, long before December 20, 2004. As noted above, "there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." Nelson, 124 S. Ct. at 2126. Like Cooper, Plaintiff waited until the State scheduled his execution date before filing suit. Thus, although Plaintiff has been somewhat more diligent than Cooper, he still must make a showing of serious questions going to the merits that is sufficient to overcome that strong presumption.[2]

---

[1] In a separate habeas corpus proceeding originally brought in the Southern District of California, an en banc panel of the Ninth Circuit granted a stay of execution to permit Cooper to pursue his claim that he is innocent of the crimes of which he was convicted and for which he was sentenced to death. Cooper v. Woodford, 358 F.3d 1117 (9th Cir. 2004) (en banc). This Court subsequently dismissed Cooper's challenge to the lethal injection protocol without prejudice in light of Cooper's failure to exhaust his administrative remedies. Cooper v. Woodford, No. C 04 436 JF (N.D. Cal. Oct. 12, 2004).

[2] Plaintiff filed his federal habeas petition in 1992, when California first adopted lethal injection as a method of execution. His petition contained a claim challenging lethal injection as cruel and unusual punishment. Defendants argue that the Court should not permit Plaintiff to relitigate this issue after

3

### B. Merits

As a general matter, Plaintiff's arguments and evidence are substantially the same as Cooper's. The differences are discussed below.[3]

Sodium pentothal is an anesthetic barbiturate sedative that also is known as thiopental sodium. It is the first drug of three that are administered under California's lethal injection protocol. Sodium pentothal is used to render the condemned inmate unconscious prior to the administration of pancuronium bromide (also known as Pavulon), a paralytic neuromuscular blocking agent, and potassium chloride, which induces cardiac arrest. The protocol calls for the administration of five grams of sodium pentothal, which the parties agree is a lethal dose if administered properly. Like Cooper, Plaintiff argues that it is possible that the sodium pentothal may not be administered properly, in which event he will experience excruciating pain as the other two drugs are administered.

In Cooper, the Ninth Circuit noted that Dr. Mark Dershwitz, a board-certified anesthesiologist on the faculty of the University of Massachusetts, had provided evidence to this Court that "over 99.999999999999% of the population would be unconscious within sixty seconds from the start of administration of this dosage of thiopental sodium" and that "this dose will cause virtually all persons to stop breathing within a minute of drug administration. Therefore . . . virtually every person given five grams of thiopental sodium will have stopped breathing prior to" the administration of pancuronium bromide. 379 F.3d at 1032. In the present

---

having been unsuccessful in pursuing it on habeas. However, Plaintiff was apparently unable to develop the claim adequately because much of the evidence he proffers was unavailable when his claims were brought before the district court. Additionally, by the present action Plaintiff is challenging lethal injection as applied under the protocol adopted by the California Department of Corrections, while his habeas claim addressed the facial constitutionality of the State's lethal injection statute. His current claims thus are not identical to those asserted in his habeas petition. See Reid v. Johnson, 105 Fed. Appx. 500, 503 (4th Cir. 2004).

[3]There is one difference between Cooper and the present case that is immaterial for purposes of resolving the issue before the Court but nonetheless should be noted. In Cooper, the Ninth Circuit cited the statutes authorizing lethal injection in thirty-seven states. 379 F.3d at 1033 n.3. Since Cooper was decided, the statutes generally authorizing the death penalty in New York and Kansas have been held unconstitutional for procedural reasons by those states' highest courts. People v. LaValle, 817 N.E.2d 341(N.Y. 2004); State v. Marsh, No. 81,135, 2004 WL 2921994 (Kan. Dec. 17, 2004).

4

action, Plaintiff's expert, Dr. Mark Heath, expresses concern that the levels of sodium pentothal found in post-mortem blood toxicology reports of executed inmates obtained since the Cooper decision indicate that in some cases the sodium pentothal may have worn off prior to the administration of pancuronium bromide. However, these reports as such are insufficient to demonstrate any reasonable possibility that Plaintiff will be conscious at any point after he is injected with sodium pentothal. Reid v. Johnson, 333 F. Supp. 2d 543, 546-48 (E.D. Va.) (explaining lack of probative value of same reports even where only two grams of sodium pentothal is administered), stay of execution denied, 125 S. Ct. 25 (2004).[4]

Like Cooper, Plaintiff's challenge assumes that there is a risk that errors will be made in the course of his execution. However, the Ninth Circuit has held that "[t]he risk of accident cannot and need not be eliminated from the execution process in order to survive constitutional review." Campbell v. Wood, 18 F.3d 662, 667 (9th Cir. 1994).

Unlike Cooper, Plaintiff also asserts a First Amendment violation, arguing that the use of pancuronium bromide during the execution will make it impossible for him to cry out if he is not unconscious and therefore experiences pain and suffering as a result of the injection of pancuronium bromide and potassium chloride. Plaintiff makes the novel argument that the existence of any possibility of an error that would result in his being conscious yet unable to communicate under such circumstances is sufficient to establish a First Amendment violation.

As noted above, even with protocols under which only two grams of sodium pentothal—as opposed to the five grams used in California—are to be administered, the likelihood of such an error occurring "is so remote as to be nonexistent." Reid, 333 F. Supp. 2d at 551. Moreover, Plaintiff's First Amendment claim cannot be so easily separated from his Eighth Amendment claims. While Plaintiff plainly has a constitutional right to an execution that does not result in "unnecessary and wanton infliction of pain," Estelle v. Gamble, 429 U.S. 97, 103 (1976) (internal quotation marks and citations omitted), there is no authority for the proposition that he has a

---

[4] Notably, "[P]laintiff's expert, Dr. Heath, has conceded [in Reid] that with respect to the pharmacokinetics and pharmacodynamics of sodium thiopental, he defers to Dr. Dershwitz's expertise." 333 F. Supp. 2d at 547 n.7.

5

constitutional right to an execution free from any possibility of error. Put differently, in the context of an execution, a right to speak in essence is a right to claim that one's Eighth Amendment rights are being violated, and the risk of an accident is insufficient to constitute an Eighth Amendment violation. <u>Campbell</u>, 18 F3d. at 667.[5]

Thus, despite his additional legal theory and recently-obtained evidence, Plaintiff, like Cooper, has done no more than raise a concern that errors may be made during his execution that could expose him to a risk of unnecessary pain. Based upon the present record, a finding that there is a reasonable possibility that such errors will occur would not be supported by the evidence. Plaintiff's action thus is materially indistinguishable from <u>Cooper</u>. Like Cooper, Plaintiff has failed to demonstrate serious questions going to the merits; it follows that he has not overcome the "strong equitable presumption against the grant of a stay," <u>Nelson</u>, 124 S. Ct. at 2126, and is not entitled to injunctive relief.

### IV. DISPOSITION

As this Court noted in <u>Cooper</u>, 2004 WL 231325, at *4, any case involving the death penalty inevitably raises serious moral, ethical, and legal questions about which people of good will continue to disagree. The present case, however, concerns the discrete question of whether Plaintiff has met the legal standard for enjoining California's lethal injection protocol for executions. Because the Court finds and concludes that Plaintiff has not met this standard and has delayed unduly in asserting his claims, and good cause therefor appearing, IT IS HEREBY ORDERED:

(1) Plaintiff's motion for a temporary restraining order or preliminary injunction is DENIED;

---

[5]To the extent that Plaintiff's First Amendment claim also involves the right of the public to witness the actual conditions and circumstances of his execution, including any pain and suffering that he might endure, that claim is substantially indistinguishable from arguments made by Cooper. 2004 WL 231325, at *2.

6

Case No. C 04 436 JF
ORDER DENYING MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND FOR EXPEDITED DISCOVERY
(DPSAGOK)

1  (2)  Plaintiff's motion for expedited discovery is DENIED as moot.

3  DATED: January 7, 2005

/s/electronic signature authorized
_____
JEREMY FOGEL
United States District Judge

Case No. C 04 436 JF
ORDER DENYING MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
AND FOR EXPEDITED DISCOVERY
(DPSAGOK)